Court is in session. Judge, when you're ready, I can call the next case. Okay, and we're now switching to the civil side of the law, so let's call the next case. The next case, number 221127, Puerto Rico Telephone Company, Inc. v. Worldnet Telecommunications, LLC. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning, Your Honors. Eliezer Matarondo for Puerto Rico Telephone Company, or PRTC. Please get the microphone a little closer. May I reserve five minutes for rebuttal, Your Honor? Okay, you may. May it please the Court. This case presents two questions that are yet to be addressed by this Court. The first question is whether it should immerse itself into a contested Article III dispute between the parties when it is undisputed that it lacks federal subject matter jurisdiction. As the Court is aware, in Badger, the Supreme Court held that, or abrogated this Court's opinion in Ortiz-Espinosa, that the Court should look beyond the arbitration award itself to find if there's any jurisdictional basis under federal law. It is undisputed that there's no such basis here. The Supreme Court has also cautioned lower courts against entertaining constitutional questions when there are other grounds in the record that may dispose of the controversy. Here, the absence of federal subject matter jurisdiction presents such a vehicle. It would make little sense for a federal court to dismiss this lawsuit on standing grounds when the case belongs in state court with its own different rules on standing. The second question in this case involves whether a respondent that is compelled to arbitrate and achieves the dismissal or denial of dozens of claims asserted against it has suffered a concrete injury that entitles it to confirmation of that arbitration award. Counsel, would you? I mean, Badger seems to be a pretty significant case in the sense that it arguably puts the federal courts out of the business of just considering straightforward requests to confirm an arbitration award, except perhaps in diversity cases. I mean, does it seem to you to be that consequential that it really almost takes the federal courts out, except in diversity? I don't know what the federal question would be that goes just to the enforceability. Pretty much out of the business. Do you see it as being consequential in that way? It is, Your Honor, and we agree with your statement. We do agree that Badger mandates, and we argue that Badger mandates, the dismissal of this appeal and the vacatur of the judgment of the district court so as to allow us to refile in state court. Badger was resolved while this appeal was pending. And for that reason, and as the court has done in other cases, one comes to mind, Diffender v. Gomez-Colón, when there's such an intervening change while the appeal is pending, the proper result is to dismiss the appeal and vacate the judgment below. And that's what we're advocating for, Your Honor. Counsel, why wouldn't we just affirm the dismissal below? Why do you think we need to vacate? Can you repeat the question, Your Honor? Why wouldn't we just, under Badger, just affirm on other grounds? I mean, the result was the case was dismissed, right? So why wouldn't we just affirm? Well, because given Badger, that prevents you from considering or resolving this appeal, which is effectively challenging the district court's dismissal below. And were this court to merely affirm the district court, that would foreclose review on the underlying petition to confirm in state court where, in our view, it belongs. So by affirming the judgment of the district court, the court without jurisdiction is effectively preventing us. Well, we could affirm on other grounds. I'm sorry if I didn't make my question clear, but we could affirm under Badger and make clear that's why we're affirming the dismissal. Would that still cause the impacts that you're worried about? Definitely. I think that the court under Badger cannot, I mean, the court must dismiss the appeal as the district court should have dismissed the case had it not issued judgment at the time without prejudice. So as to allow us to refile in state court. Now, it's a little bit different here because when Badger was resolved, the matter was on appeal, as it was the matter on that other case I just mentioned, Diffenderfer. The matter was on appeal, and the court was effectively deprived of jurisdiction to review the district court's judgment below. And in those circumstances, what the case still says is that this court, the proper course would be to vacate the judgment below if it understands that it lacks jurisdiction to review that determination from the district court on appeal. I guess I'm just trying to understand. You're saying we have to dismiss the appeal. Why would we have to dismiss the appeal? I mean, there's questions about jurisdiction that come up to us all the time, and we evaluate what the outcome of that question should be, and then we issue a decision. We don't dismiss the appeal. We decide the appeal, and we decide the issue, whether there was subject matter jurisdiction or personal jurisdiction or whatever it may be. Well, certainly you must consider whether Badger applies, and that's definitely correct. The ultimate determination to be made after you render or you consider whether Badger applies or not, which in our view is that it does, if you agree with us, we do think that the proper course would be to vacate the judgment below. Whether the appeal should be dismissed, in our view, based on other cases we've seen and briefed, that's the usual course that the court takes. Let me ask, would another alternative be for us to remand the case so the district court can consider the implications of Badger? It never did. The Badger case came after it had issued its judgment. That is another option, Your Honor. That's definitely another option where you can remand for the court to consider that question below and make a determination whether federal courts have jurisdiction or do not have jurisdiction under Badger. All these different approaches. What if we were to put Badger aside? I guess you say we can't do that, but what if we were to agree with you that the district court was quite wrong in its Article III standing analysis and vacated and sent it back on that basis? I mean, you would win, but not quite as much as you would like to win, I guess. Or we could do that and combine it with what Judge Shelby just suggested, of course, now that Badger has happened and so we're sending it back, but you also have to consider Badger as well. How would you feel about that? I think, Your Honor, I still have to file in state court one way or the other, so I wouldn't consider that a win, but I do think that even if you were to rule that the court erred in its Article III determination, I think Badger would still apply. As you said earlier, it seems like the Supreme Court limited petitions to confirm to some federal question cases, which are harder to combine, in my view, and mostly diversity cases, and this case doesn't fit either one. So even if I were to prevail on this other issue on appeal, which is the Article III issue, I think Badger will mandate a dismissal without prejudice of the petition to confirm, so as to allow PRTC to refile in state court. And your view is just why should we decide the Article III issues? That's still a constitutional analysis that we have to do to decide, you know, is there an Article III case or controversy? I don't think you have to. Right, so you're saying why should we go ahead and decide a constitutional question when we can avoid it and simply dismiss the case under Badger? That's your position, right? And even more what you're saying is that we wouldn't even really be providing guidance because standing issues in the Commonwealth courts are going to be different. It's not the same analysis. Obviously, Article III doesn't apply. So in a sense, perhaps giving an advisory opinion would be one way to talk about it, in your view? That's our argument, Your Honor. So unless the Court has any other questions, I'll reserve the remainder of my time for rebuttal. Okay, thank you. Thank you. Let's hear then from Counselor Rodríguez-Marzouach. Good morning. May I please the Court, Miguel Rodríguez-Marzouach, on behalf of WorldNet Telecommunications, LLC. PRTC file its petition for confirmation before this is recorded in September 2001. Seeking to confirm a final arbitration award regarding a liquidated damages dispute. The final arbitration award was issued pursuant to an interconnection agreement between the parties dated 2018. It was immediately apparent to WorldNet that PRTC's intention when filing for confirmation was to somehow sidestep or bypass the confidentiality provisions in the interconnection agreement, which prohibited either party from disclosing information regarding the arbitration proceedings, the arbitration award, and all documents regarding the same. PRTC's intentions were apparent to WorldNet because PRTC had no need to enforce the final arbitration award, and at the time, the companies were still involved in various similar arbitration proceedings for different periods of time, and under which, in some of them, WorldNet had been very successful and obtained resources that were markedly different from the one, the arbitration, that is the object of this appeal. It was easy to conclude, therefore... Sorry, go ahead. Shouldn't your primary mission here today be to convince us that BadgerO does not require that this case be dismissed for lack of subject matter jurisdiction? I mean, it's not a diversity case. What is the federal question that might be involved in deciding whether this arbitration award should be confirmed? Is there any federal question? Admittedly, there is no federal question. I mean, we basically, our position is that the judgment issued by the district court was issued with jurisdiction, and therefore, this court can actually pass judgment over the judgment that was validly issued. I'm asking you, what is the basis for that assertion that the court had jurisdiction in light of the BadgerO decision? Because BadgerO was passed after the judgment was issued. That's the only argument you make? That is the argument we have, Your Honor. Okay. I mean, admittedly, after BadgerO, you know, the district court would not have jurisdiction. Oh, you concede that? Yes. Okay. Well, what would be our remedy? Should we decide, decide it and say no jurisdiction and basically vacate everything and with an instruction to dismiss under BadgerO or send it back so the district judge consider BadgerO, or what would you propose that be done? We think that, you know, this appeal is about the judgment. And I think that, you know, what we believe should happen is that the court should pass judgment over the judgment. And we believe that Article III considerations have to be considered. And based on the case law, the judgment should be confirmed. That's what we believe. And that's what I was ready to argue. But, counsel, why should we reach the case or controversy issues here when we don't need to? I mean, you know, it's interpreting the Constitution. It's a constitutional question. It's not entirely straightforward. It requires detailed analysis. We can resolve this case under BadgerO. So what would be the reason for us to reach the more difficult case or controversy dispute here? I think that, you know, it's not a matter of difficulty. I think that it's a matter of the judge. I mean, the district court issued a judgment that we believe should be considered on the merits by this court. But we can affirm on other grounds. I mean, we do that all the time. So I think there's also case law that suggests courts should decide simpler issues rather than more complicated issues when they don't need to. So, again, just from a practical standpoint, why would we do that here? We're not going to be providing guidance to the Commonwealth courts. They have different standards, obviously, for standing. So what would be the reason to decide the case or controversy issue? As opposed to affirm, what would be the alternative, Your Honor? Well, just apply BadgerO. Just apply BadgerO and dismiss or vacate? One or the other, yes. But essentially the case under BadgerO can't be in federal court at all, right? Okay. Let me just add to that. What I sort of have suggested is if we determine BadgerO applies, we vacate the judgment and instruct, dismiss the case based on BadgerO. That would be it. Do you have an issue with that? I think that's an alternative. You say it's an alternative. Brother counsel for the opposing side agrees it's an alternative. Shouldn't that be then the result? That is the court's prerogative, Your Honor. I mean, you're still in business. It's just you're going to be in business in the Commonwealth court. Then you can start not to minimize the work involved, but then you can just start the fight all over again in the Commonwealth court, right? Your Honor, I mean, the problem is that we don't want to be in business, I guess. You know, we want this business to end, in essence. And that's why we're advocating for the position we're advocating. And that's what I wanted to highlight, the fact that there's really no ulterior motive why the case should continue. The interconnection agreement is no longer even in existence. It was amended in February 2022 to basically eliminate 95% of the instances where liquidated damages could be obtained. And the contract terminated. It was basically amended in October 2023. And there is a new interconnection agreement that there are very few instances where liquidated damages can be billed. That would be a matter to be addressed by the state courts, I guess. And again, they might find it's moot. They might find, you know, or who knows, it might get settled or who knows what can happen. But, you know, again, Badger case is, you know, it's... It is before us, yes. And it says what it says. And we wish it had been here maybe in 1992. You'd be having lunch now. But that's, you know, fortunately, you know, things like this happen. Okay. Anything else, counsel? Your Honor, basically, we wanted to address the issue that, you know, there's really... Basically go over the Article III issues. Okay? And in essence, I mean, we believe that we want to reiterate that regarding that, Article III, there are basically two issues that I think the court would have to look at. And one is whether the Federal Arbitration Act or any federal statute for that matter can override the irreducible constitutional minimum in Article III. And the other one is if the district court erred in finding that there was no standing. And the answer to both questions is no. And, you know, PRTC relies on the case of Hall Street and other cases to argue that the language in the Federal Arbitration Act, the use of the word must, somehow should, you know, prove that the district court was wrong. And that is not correct. Let me ask this again. We've been proposing various solutions, but let's assume we were to affirm that at the time the district judge decided the Article III issue, that was correct, but we clarified that based on Badger O, this can continue at the state level or let the judgment clarify that. That would be another solution, correct? Well, the problem is that we have a judgment that we don't think should be vacated because it was issued correctly with jurisdiction at the time, yes.  Counsel, I have to acknowledge that I do have some serious reservations about the correctness of the district court's standing analysis, particularly its focus on the lack of an injury when the parties that entered into a contractual agreement that provided, that anticipated judicial confirmation of an award and that statutory right and contractual expectation is arguably abrogated by what the district court did here. But all that aside, I mean, Judge Rickleman makes the point. Those are not suggesting that's a straightforward issue. There's some complication there. But why should we wade into all of that when, as you acknowledge, I guess you raise a kind of retroactivity, but you acknowledge that Badger O, as written, as applied, deprived the Court of Subject Matter Jurisdiction. Why would we get into all that standing stuff when Badger O seems to settle the question on subject matter jurisdiction ground? Why should we get into all that? Well, I think it would be probably the best, the easiest, fastest way to be done with this business, to use the word that the Court used. That would put an end to the controversy. Otherwise, this may continue, will continue before the district court and eventually, potentially, the state court. And we really see that as a waste of judicial resources. Obviously, the judicial resources of the state are not necessarily the business of this court. But we feel that the most expeditious way to deal with this case would be, as suggested, to basically confirm the district court judgment that was entered with jurisdiction. And we feel it's legally correct and valid. Thank you. Any other questions? Okay. Thank you, Counsel. Thank you. Okay. Mr. Aldarondo, please re-identify yourself. And you have five minutes, although you don't have to use them all. I think the issues have been sort of pretty much narrowed down. So, go ahead. Yes. Eliezer Aldarondo on behalf of PRTC. Unless the Court has any other questions, I'll happily yield my time back to the Court and submit the case, the remainder of our case, on the briefs. Okay. Thank you very much. You're excused. Thank you, Your Honors. Have a good day. That concludes arguments in this case.